# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TERRY CHANEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 1:18-cv-237-TFM-M |
| ) | |
| COMMUNITY HOSPICE OF ) | |
| BALDWIN COUNTY ) | |
| and JENNIFER STEWART, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is Defendant Jennifer Stewart's Motion for Summary Judgment (Doc. 17, filed August 21, 2018). The Court has carefully reviewed the pleadings, motion, and response in this matter, and it is ripe for review. For the reasons discussed below, the motion is **GRANTED**.

### I. JURISDICTION

The Plaintiff, Terry Chaney ("Plaintiff" or "Chaney") asserts claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as she alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. No party contests either subject matter or personal jurisdiction and adequate support exists for both.

### II. BACKGROUND AND PROCEDURAL HISTORY

Chaney, proceeding *pro se*, filed a complaint in this case asserting claims of discrimination on the basis of race, national origin, age, and mental disability by her former employer, Community Hospice of Baldwin County ("CHBC"), and Jennifer Stewart ("Stewart") (collectively,

"Defendants"), a registered nurse and administrator for CHBC[1] (Doc. 1, filed May 22, 2018). She also asserts that Defendants retaliated against her for reporting discrimination and harassment. Specifically, Chaney alleges that she began working for CHBC in October 2008, and that she was harassed and discriminated against by Stewart and another employee referred to as "Dr. Dan." *Id*. at 2. She asserts that she reported the discrimination to a superior at CHBC and filed charges alleging discriminatory conduct with the Equal Employment Opportunity Commission ("EEOC") on May 6, 2017, and that Stewart retaliated against her for doing so. Chaney alleges that "she"—presumably Stewart—"remind[ed] me when she started back to work in April or May, 2017 that she [was] going to terminate me from my job, and [would] make sure I will never work again." *Id*. at 1. Chaney asserts she was terminated on September 25, 2017, "because of my age and in retaliation for reporting" the discrimination and harassment to a vice president at CHBC. *Id*. at 3. She alleges Stewart stated that, "because of my age I can't do what I used to do. I could not believe Dr. Dan told me that they [were] firing me for that and some more, I could not believe his words." *Id*. Chaney asserts that she received a right-to-sue letter from the EEOC on March 28, 2018. From this action Chaney seeks, *inter alia*, back pay and reinstatement to her former job.

Stewart has moved for summary judgment (Doc. 17, filed August 21, 2018), arguing that Chaney's claims against her are due to be dismissed because Title VII, the ADA, and the ADEA do not provide for such causes of action against an individual employee. Stewart asserts that she was not Chaney's employer, but rather, her former supervisor and an agent of CHBC. Stewart argues that, because Chaney has correctly named CHBC in the suit, also naming Stewart as a party is unnecessary and redundant.

---

[1] Chaney also named in the suit Brett Adair, the attorney representing CHBC and Stewart in these proceedings. However, the claims against Adair were dismissed without prejudice (Doc. 21, filed August 22, 2018).

Stewart has attached to her motion an affidavit in which Stewart states that Chaney was a CHBC employee from October 8, 2008, until September 25, 2017. Doc. 18-1 at 2. Stewart avers that, during Chaney's period of employment, Stewart served as CHBC's administrator, a role in which she directed and had oversight of all employees, including Chaney. She asserts, however, that: (1) Chaney directly reported to another supervisor; (2) she did not pay Chaney any wages; (3) there was no contract of employment between Chaney and herself; (4) she did not employ Chaney in any way; and (5) she and Chaney both were employees of CHBC. She also asserts that, as Chaney's superior, she did not make any decisions regarding Chaney's employment on the basis of Chaney's age or in retaliation for Chaney's engaging in any protected activity.

In a response (Doc. 30, filed 9/11/18), Chaney states that Stewart "made sure that she got her point across to me in front of everyone at our CNA luncheon that she [was] going to terminate me, make sure I would never work again, if she had [anything] to do with it. She used her [p]ower to make my job very difficult." *Id*. at 1. Chaney asserts, as an example, that Stewart had hired a part-time employee to cover shifts when workers needed time off, but when Chaney was sick and needed time off, Stewart told her no one could cover her shift. She alleges that, instead, Stewart sent her "a nasty text that I need to speak to her," even though Chaney had followed the same procedure as other employees. *Id*. Chaney states that Stewart "did everything to humiliate me from day one," from May 2017 until her firing in September 2017. *Id*. She alleges that "Dr. Dan" and CHBC went along with Stewart's behavior, and that they discriminated against her based on her race, national origin, and age, made fun of her disability,[2] harassed her, and retaliated against her for trying to protect her rights through complaints to the EEOC. *Id*. at 1-2. She also asserts that Defendants hacked her phone and destroyed evidence supporting her allegations. Stewart did

---

[2] The nature of Chaney's alleged disability is unclear from the pleadings.

not file a reply.

### III.　STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but merely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citation and internal quotations omitted).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the nonmoving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary

judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990).

Finally, Fed. R. Civ. P. 56(e) provides that:

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED. R. CIV. P. 56(E).

## IV. DISCUSSION AND ANALYSIS

Pleadings by *pro se* litigants "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 557, 199 L. Ed. 2d 446 (2017) (citation and internal quotations omitted); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992) (stating that the court should use "common sense" when interpreting *pro se* pleadings). "When a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Evans*, 850 F.3d at 1254 (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (internal quotations omitted)). "Although a *pro se* litigant generally should be permitted to amend her complaint, a district court need not allow amendment when it would be futile." *Id.* (citing *Cockrell v. Sparks*, 510 F.3d 1307,

1310 (11th Cir. 2007)). Leave to amend is futile when the amended complaint still would be immediately subject to summary judgment for the defendant. *Id.*

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such person….*" 42 U.S.C. § 2000e(b) (emphasis added).

Similarly, Subchapter I of the ADA requires that, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "covered entity" refers to an employer, employment agency, labor organization, or joint labor-management committee. 42 U.S.C. § 12111(2). The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, *and any agent of such person….*" 42 U.S.C. § 12111(5) (emphasis added).

The ADEA renders it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Act defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks

in the current or preceding calendar year … [or] *any agent of such a person ….*" 29 U.S.C. § 630(b) (emphasis added).

Relief under Title VII "is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (citing *Hinson v. Clinch Cty Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)) (emphasis omitted). In *Busby*, the Eleventh Circuit determined that "[i]ndividual capacity suits under Title VII are … inappropriate." *Busby*, 931 F.2d at 772; *see also Braden v. Piggly Wiggly*, 4 F. Supp. 2d 1357, 1364 (M.D. Ala. 1998) ("Title VII does not impose individual liability but only holds the employer accountable for the acts of its individual agents") (citation and internal quotations omitted).

As the circuit court stated, "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby*, 931 F.2d at 772. Essentially, the Eleventh Circuit has "assumed that the [Title VII] statute's reference to 'any agent' as part of the definition of 'employer' merely confirms that employers can be held liable for acts of discrimination by their agents." *Vernon v. Med. Mgmt. Assoc. of Margate, Inc.*, 912 F. Supp. 1549, 1555 (S.D. Fla. 1996) (dismissing claims against defendants sued in their individual capacities in a Title VII suit against a private employer). Although some circuits have held that an employee/agent may be held individually liable under Title VII's definition of "employer," this Circuit has determined that "discriminatory personnel actions taken by an employer's agent only create liability for the employer-entity, and not for the agents themselves." *Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1482 (M.D. Ga. 1998) (citing *Busby*, 931 F.2d at 772; *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.

1995); *see also Prescott v. Indep. Life and Accident Ins. Co.*, 878 F. Supp. 1545, 1552 (M.D. Ala. 1995) ("[A] suit under Title VII brought against an employee as agent of the employer is regarded as a suit against the employer itself") (citing *Busby*, 931 F.2d at 772); *Wheeles v. Nelson's Elec. Motor Servs.*, 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008) ("A plaintiff may bring a Title VII suit against an individual in his official capacity … [h]owever, when a plaintiff names both the employer and the individual supervisor in [her] official capacity, the supervisor may be dismissed from the action") (citations omitted); *Davis v. Infinity Ins. Co.*, Case No. 2:15-cv-01111-JHE, 2016 WL 4507122 *18 (N.D. Ala. Aug. 29, 2016) (noting that, where an employer already is a named defendant, "claims against a supervisory employee in her official capacity are 'redundant' and 'would be futile'").

In line with its stance on individual liability under Title VII, the Eleventh Circuit has found that employees are not subject to individual liability under the ADA or the ADEA. *Albra v Advan, Inc.*, 490 F.3d 826, 829-30 (11th Cir. 2007) (noting that the ADA's definition of "employer" is similar to the definition used in Title VII and the ADEA, neither of which countenance individual liability) (citation omitted); *see also Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (holding that the ADA "does not provide for individual liability, only for employer liability," noting that this Circuit previously had held that there was no individual responsibility under either Title VII or the ADEA); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (Individuals "cannot be held liable under the ADEA or Title VII"); *Fodor v. D'Isernia*, 506 F. App'x 965, 966 (11th Cir. 2013) (noting that the ADA does not provide for individual liability).

The Eleventh Circuit also has looked to Title VII in determining questions of agent liability under the ADA and ADEA. *See Garcia v. Copenhaver, Bell & Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1253 (11th Cir. 1997) ("In interpreting ADEA's definition of 'employer,' Title VII cases

are helpful"); *Mason*, 82 F.3d at 1009 (noting that the definition of "employer" in the ADA was like the definition in Title VII and the ADEA and determining that the "agent" language was included in the ADA's definition merely to ensure that employers are liable for the acts of their agents under respondeat superior). As with Title VII, an official-capacity suit under the ADEA "is the same as a suit against the employer. Thus, official capacity suits against employees can be dismissed as redundant where the employer is a properly named defendant in the lawsuit." *Wheeles*, 559 F. Supp. 2d at 1267 (dismissing an individual employee defendant where the plaintiff's private employer also was named as a defendant in an ADEA claim) (citation and internal quotations omitted); *see also Waters v. Baldwin Cty.*, 936 F. Supp. 860, 862 (S.D. Ala. 1996) (dismissing, *sua sponte*, claims against individual defendants sued in their individual and official capacities under the ADA, noting that "there is no need for [a] plaintiff to sue both [her] employer and [her] supervisors in their official capacities because of the law of agency").

As an initial matter, it is unclear from the face of the complaint whether Chaney seeks to hold Stewart liable in her individual capacity or as an agent of CHBC. In her motion, Stewart appears to address both theories of liability. In light of Stewart's motion and Chaney's *pro se* status, the Court will do so as well. As another threshold matter, Chaney, a *pro se* plaintiff, has not been provided leave to amend her complaint to plead her claims with more particularity or cure any other potential deficiencies. *See Evans*, 850 F.3d at 1254. However, granting leave to amend would be futile in this instance because Chaney's claims against Stewart would be subject to dismissal regardless for the reasons discussed below. *See id*.

Turning to the merits of Stewart's motion, this circuit's case law clearly demonstrates that the statutes under which Chaney seeks recovery—Title VII, the ADA, and the ADEA—do not provide for individual liability. *See, e.g., Albra*, 490 F.3d at 829-30; *Dearth*, 41 F.3d at 933; *Busby*,

931 F. 2d at 772; *Mason*, 82 F. 3d at 1009; *Smith*, 45 F.3d at 403 n.4; *Fodor*, 506 F. App'x at 966. Thus, Stewart cannot be held individually liable for violations under these Acts. As to any potential liability in her official capacity, Stewart acknowledges in her motion for summary judgment that she is a supervisor and agent of CHBC. *See* Doc. 17 at 6. Moreover, claims may be brought against agents of an employer in their official capacity. *See Mason*, 82 F.3d at 1009; *Wheeles*, 559 F. Supp. 2d at 1267; *Waters*, 936 F. Supp. at 862; *Prescott*, 878 F. Supp. at 1552; *Davis*, 2016 WL 4507122 *18. Nevertheless, suing Stewart in her official capacity is, in essence, merely another way of suing Chaney's employer, CHBC. *See Mason*, 82 F.3d at 1009; *Wheeles*, 559 F. Supp. 2d at 1267; *Waters*, 936 F. Supp. at 862; *Prescott*, 878 F. Supp. at 1552. Any violation of those statutes by Stewart as an agent of CHBC would properly render CHBC the liable party as Chaney's employer. *See Busby*, 931 F.2d at 772; *Gibson*, 2 F. Supp. at 1482; *Vernon,* 912 F. Supp. at 1555; *Prescott*, 878 F. Supp. at 1552. Because Chaney already has named CHBC in the complaint, also naming Stewart is unnecessary and redundant. *See Davis*, 2016 WL 4507122.

### V. CONCLUSION

Based on the foregoing, Stewart's Motion for Summary Judgment (Doc. 17) is **GRANTED.** Claims against Stewart in her individual capacity are **DISMISSED WITH PREJUDICE.** Because Chaney's employer, CHBC, already is a named defendant in this case, claims against Stewart in her official capacity are duplicative, and thus, **DISMISSED WITHOUT PREJUDICE**.

**DONE and ORDERED** this 7th day of February 2019.

    /s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE